# 25-986

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

JOHN DOE,

*Plaintiff-Appellant,*

-v.-

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a COMBS ENTERPRISES LLC,
BAD BOY ENTERTAINMENT HOLDINGS, INC., BAD BOY PRODUCTIONS
HOLDINGS, INC., BAD BOY BOOKS HOLDINGS, INC., BAD BOY
ENTERTAINMENT LLC, and BAD BOY PRODUCTIONS LLC,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Southern District of New York

## BRIEF OF PLAINTIFF-APPELLANT

**CURIS LAW, PLLC**
Antigone Curis
52 Duane Street, 7th Floor
New York, New York 10007
(646) 335-7220
*Attorneys for Plaintiff-Appellant*

August 6, 2025

## <u>**TABLE OF CONTENTS**</u>

**Page**

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................1

STATEMENT OF THE CASE..............................................................1

PROCEDURAL HISTORY ................................................................4

STANDARD OF REVIEW ..................................................................6

ARGUMENT ......................................................................................6

CONCLUSION ................................................................................ 20

i

# TABLE OF AUTHORITIES

## Federal Cases

*Doe ex. Rel. Doe No. 1 v. Nygard*,
   No. 20-cv-06501 (ER), 2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020)...10, 11, 15, 18

*Doe No. 2 v. Kolko*,
   242 F.R.D. 193 (E.D.N.Y. 2006) ...........................................................................10

*Doe v. Combs*,
   No. 23-cv-10628 (JGLC), 2024 WL 863705, at *3 (S.D.N.Y. Feb. 29, 2024) ....16

*Doe v. Freydin*,
   No. 21-cv-08371 (NRB), 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021)....13

*Doe v. Gooding,*
   No. 20-cv-06569 (PAC), 2022 WL 1104750, at *7 (S.D.N.Y. Apr. 13, 2022).....16

*Doe v. Smith*,
   189 F.R.D. 239 (E.D.N.Y. 1998) ...........................................................................8

*EW . N.Y. Blood Center*,
   213 F.R.D. 108 (E.D.N.Y. 2003) ...........................................................................8

*Rapp v. Fowler*,
   537 F.Supp.3d 521 (S.D.N.Y. 2021)....................................................................10

*Sealed Plaintiff v. Sealed Defendant*,
   537 F.3d 185 (2d Cir. 2008)......................................................................... passim

*United States v. Pilcher*,
   950 F3d 39 (2d Cir 2020) ........................................................................... 1, 6, 7

*Zervos v. Verizon NY, Inc.*,
  252 F3d 163 (2d Cir 2001) ...................................................................6

## State Cases

*MZ Dental, P.C. v. Progressive Northeastern Ins. Co.*,
  786 N.Y.S. 2d 908 (2004) ................................................................12

## Statutes

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1332 .................................................................................1

N.Y.C. Admin. Code § 10-1102 ..........................................................2

## Rules

Fed. Rule Civ. Proc. 10(a).............................................................. 1, 4, 7

## Other Authorities

V. Alexander, Practice Commentaries to CPLR 2106 (McKinney's 2004).............12

## JURISDICTIONAL STATEMENT

Plaintiff brought this action for gender-motivated violence under the diversity jurisdiction statute, 28 U.S.C. § 1332, and accordingly the district court properly had subject-matter jurisdiction. On March 27, 2025, the district court, the Hon. Jennifer L. Rochon presiding, denied Plaintiff's motion to proceed anonymously pursuant to Federal Rule of Civil Procedure 10(a), which order in this Circuit is immediately appealable under the collateral order doctrine. *United States v. Pilcher*, 950 F3d 39, 41 (2d Cir 2020). Plaintiff timely filed a notice of appeal on April 20, 2025. This Court therefore has appellate jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Whether the district court erred in denying Plaintiff's renewed motion to proceed anonymously in light of (1) the circumstances of this and similar cases and (2) the supporting evidence presented.

## STATEMENT OF THE CASE

Plaintiff John Doe brought this action against Defendant Sean "Diddy" Combs ("Combs") and company Defendants Daddy's House Recordings Inc., CE OpCo, LLC d/b/a Combs Global f/k/a Combs Enterprises LLC, Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Entertainment LLC, and Bad Boy Productions

1

LLC (collectively the "Company Defendants") seeking damages under the Victims of Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code § 10-1102 for the sexual assault of Plaintiff while attending a "White Party" at Combs' residence in the Hamptons.

In 1998, while he was just sixteen, Plaintiff was recruited to attend one of Defendant Combs' legendary "White Parties" at Combs' residence in the Hamptons. [A26-27, ¶ 34-35.] At the time, Plaintiff hoped to break into the music industry. [*Id.* ¶ 34.] While at the party, Plaintiff was shocked and excited to bump into Combs. [A27, ¶ 36.] Combs took Plaintiff to a "more private area" near portable restrooms outside. [A28. ¶ 37.] There, Plaintiff told Combs about his admiration for Combs and dreams of becoming a star. [*Id.*] Combs told Plaintiff that he had "the look," and that "the look" was the only thing that mattered – that Combs could make him a star. [*Id.*]

After Combs complimented Plaintiff and told him he could be a star, Combs abruptly told Plaintiff to drop his pants, and then repeated the instruction when Plaintiff – who was only sixteen at the time – appeared confused. [A28, ¶ 38]. Combs told Plaintiff that he wanted to "inspect" his penis, that this was a "rite of passage" and a way for Plaintiff to prove himself. [*Id.*] Out of fear and anxiety and the palpable power imbalance between the two, Plaintiff dropped his pants and exposed his penis, while Combs stood still with a hand outstretched and cupped in

2

anticipation. [*Id.* ¶ 39.] Combs grabbed Plaintiff's penis and genitals, holding and manipulating them for an extended period. [*Id.* ¶ 40.] Finally, Combs let go and told Plaintiff that his people "would be in touch." [*Id.* ¶ 41.] Plaintiff was shaken by the event and continues to experience mental anguish and shame. [A29, ¶ 42.] Plaintiff did not report the incident due to Combs' power and notoriety. [*Id.* ¶ 43.]

In addition to the circumstances of Plaintiff's assault, the Complaint includes numerous allegations of Defendant Combs' predatory sexual behavior and violent proclivities over the course of many years. [A15-21, ¶¶ 2 – 22.] Among other things, the Complaint alleges a number of lawsuits arising from assault [A17, ¶ 8a-b] and sexual abuse of girlfriends. [*Id.* ¶ 8d] It details how Combs was found guilty of criminal mischief for threatening a photographer with a gun; how he was arrested and charged with assaulting a record executive; how he was arrested again in the same year for his involvement in a shooting in a New York nightclub, and other similar incidents over time. [A18, ¶ 11.] The Complaint details a veritable tidal wave of sexual assault allegations brought against Combs by numerous plaintiffs over the past few years. [A18-20, ¶ 12-19.]

Finally, the Complaint alleges that in September 2024, Combs was indicted by the United States government on charges of sex trafficking, racketeering and related crimes. [A20, ¶ 20.] Recently, Combs was found guilty of two of those charges and is awaiting sentencing. Despite the fact that Combs was not convicted

3

of all charges against him, Judge Subramanian of the Southern District of New York recently denied Combs' request for bail, citing Combs' propensity for violence as a primary factor.  [A56-57.]

## PROCEDURAL HISTORY

### *Relevant Proceedings Below*

Plaintiff filed his complaint in this matter on October 14, 2024, using the pseudonym John Doe.  On October 16, 2024, the district court ordered Plaintiff to file a motion supporting his use of a pseudonym.  [A7, DE 22.]  Plaintiff filed his initial motion, pursuant to Federal Rule of Civil Procedure 10(a), the same day, accompanied by a declaration from counsel.  [*Id.*, DE 24-26.]  On October 17, 2024, the district court granted Plaintiff's motion to proceed anonymously "for substantially the reasons set forth in Plaintiff's application for leave to proceed anonymously, Dkts. 24-26."  [A38.]  That order noted that upon Defendants' appearance, the court might revisit the order, "including to consider whether to order Plaintiff to provide his identity to counsel for Defendant, as contemplated in the Declaration of Anthony Buzbee." [*Id.*]

On January 13, 2025, in connection with defendants' appearance in the action, the district court ordered that Plaintiff file a renewed motion to proceed anonymously.  [A8, DE 34.]  As the initial motion had been found sufficient, Plaintiff filed a substantially identical motion and declaration from attorney

4

Anthony Buzbee ("Buzbee Declaration") that same day.  [*Id.*, DE 35-37; A39-42.]

Defendants filed an opposition to Plaintiff's motion on February 11, 2025.  [A10,

DE 50.]

### *The Opinion and Order Appealed From*

On March 27, 2025, the district court issued an opinion and order denying

Plaintiff's renewed motion to proceed anonymously.  [A43-54.]

The court found that the first factor under *Sealed Plaintiff v. Sealed

Defendant*, 537 F.3d 185 (2d. Cir. 2008) (*see* discussion *infra*), that the litigation

involved matters that are highly sensitive and of a personal nature, was satisfied.

[A45-46.]   The court also found that the seventh factor, that the plaintiff's identity

had been kept confidential, was also satisfied or at least not shown to be false.

[A46-47.]  These were the only two factors on which the district court expressly

found for Plaintiff.

The district court found that three other factors involving the risks of

identifying the Plaintiff, including the "potential for retaliatory physical or mental

harm, and the severity of such harms," were speculative and insufficiently

particularized.  [A48-50.]  The district court's conclusion appears to have been

driven in large part by its characterization of the supporting Buzbee Declaration as

"vague and unsworn" and "substantially similar" to declarations

contemporaneously filed in other companion cases.  [A46, A48.]  The district court

also found that Combs' pending criminal charges were too speculative to support anonymity. [A49.]

The trial court found that several "public interest factors" cut evenly in favor and against granting anonymity [A50-52] and that "other mechanisms" existed to protect Plaintiff's privacy interests, including the entry of a protective order to protect things like sensitive financial information from public disclosure.

Finally, the district court found that Defendants would suffer "significant prejudice" if Plaintiff was allowed to proceed anonymously. [A52-53.]

## STANDARD OF REVIEW

A district court's decision to grant or deny an application to litigate under a pseudonym is reviewed for an abuse of discretion. *United States v Pilcher*, 950 F.3d 39, 41 (2d Cir 2020). A district court "'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *Zervos v. Verizon NY, Inc.*, 252 F3d 163, 169 (2d Cir 2001).

## ARGUMENT

This appeal that presents a single issue: whether Plaintiff's request to proceed anonymously in this case was erroneously denied. And it is the context of

6

this case – and numerous similar ones – which is perhaps most critical here. This case involves highly sensitive claims of a personal nature (sexual assault) against a notorious celebrity, who at the time the complaint was filed was under federal indictment and who now has been convicted of several criminal counts, and who has a long and well-documented history of violence.

The district court initially acknowledged the factors cited by Plaintiff as sufficient justification to grant Plaintiff's motion. [A38.] Upon consideration of a renewed motion from Plaintiff, the district court reversed course, finding that the same declaration from counsel was unreliable and that defendants faced substantial prejudice from Plaintiff remaining anonymous. [A43-54.] The district court's conclusions were unwarranted and erroneous under relevant case law, especially at the nascent stage of the proceedings and in light of existing circumstances surrounding defendant Combs.

### The Law Concerning Anonymity

Pursuant to Federal Rule of Civil Procedure 10(a), the general rule in federal courts is that "title of [a] complaint must name all the parties." Fed. Rule Civ. Proc. 10(a); *Pilcher*, 950 F.3d at 42. However, a district court has discretion to grants an exception to the "general requirement of disclosure of the names of parties" to permit a plaintiff to proceed under a pseudonym. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) ("*Sealed Plaintiff*") (internal

7

quotation marks and citation omitted); *see also EW . N.Y. Blood Center*, 213 F.R.D. 108, 110 (E.D.N.Y. 2003); *Doe v. Smith*, 189 F.R.D. 239, 242 (E.D.N.Y. 1998), vacated on rehearing and modified on other grounds, 105 F.Supp.2d 40, 45 (E.D.N.Y. 1999).

The primary question for the district court is whether a plaintiff has a "substantial privacy" interest that "outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Sealed Plaintiff*, 537 F.3d at 189 (internal quotation marks and citation omitted). The plaintiff's interest in anonymity must be balanced against the public interest in disclosure and any prejudice to defendants. The *Sealed Plaintiff* case identifies ten non-exhaustive factors to be weighed in this analysis:

1) whether the litigation involves matters that are highly sensitive and of a personal nature;

2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or, even more critically, to innocent nonparties;

3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of disclosing the plaintiff's identity;

8

4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly given his or her age;

5) whether the suit is challenging the actions of the government or that of private parties;

6) whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

7) whether the plaintiff's identity has thus far been kept confidential;

8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his or her identity;

9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 189-190 (internal quotation marks, citations, and alterations omitted). Courts "are not required to consider any or all of [the factors], nor must they use any particular approach, so long as they **balance the relevant interests at stake when reaching a conclusion**." *Doe ex. Rel. Doe No. 1 v.*

9

*Nygard*, No. 20-cv-06501 (ER), 2020 WL 4890427, at *5 (S.D.N.Y. Aug. 20, 2020) (emphasis added).

### The First Factor Should Weigh Almost Decisively in Plaintiff's Favor

The district court observed that sexual assault and sexual abuse are "paradigmatic" examples of when plaintiffs may desire to proceed anonymously. [A45-46]; *Rapp v. Fowler*, 537 F.Supp.3d 521, 528 (S.D.N.Y. 2021). Moreover, the court acknowledged that "allegations of sexual abuse of minors … typically weigh significantly in favor of a plaintiff's interest." [A46]; *Rapp*, 537 F. Supp. 3d. at 528 (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *see also Nygard*, 2020 WL 4890427, at *3 (granting anonymity in similar case involving a high-profile sexual predator).

Plaintiff was a sixteen-year-old boy at the time he was assaulted by Combs at Combs' party. Plaintiff was emotionally confused and traumatized by the event. And, as the court noted, Plaintiff has never disclosed or discussed the assault publicly. [A46-47.] As the court in *Sealed Plaintiff* observed, the various factors identified by that court are nonexhaustive, and *neither are they all to necessarily be weighed equally* or even close to equally. 537 F.3d at 189-190. This factor should have been treated as dispositive or nearly dispositive by the district court but for reasons enumerated below, it was not.

10

All parties and the district court acknowledged the outsized role here that Combs' alleged sexual assault of a minor should play in determining Plaintiff's right to proceed anonymously. In *Nygard*, a similar case, this factor was almost entirely determinative. *Nygard,* 2020 WL 4890427, at *5-7. Moreover, the *Nygard* court found the "public interest [in protecting the identity of victims of sexual assault] is only stronger ***given the sprawling allegations of widespread sexual abuse*** levied against Nygard in related proceedings," proceedings strikingly similar to those surrounding Combs. *Id*. (emphasis added).

The *Nygard* court further concluded that other factors similar to those involved here – the power, wealth and celebrity status of the defendant, the early stage of the proceedings, and the availability of multiple means of reducing or eliminating prejudice to the defendant, all weighed "strongly" in favor of granting the request to proceed anonymously. *Id.*

### The District Court Erroneously Discounted The Buzbee Declaration

As can be inferred from its initial order granting Plaintiff's motion for anonymity, the district court had no objection to the Buzbee Declaration at the time it first was filed. [A-38.] When Plaintiff's motion was renewed, however, Defendants objected to the Buzbee Declaration primarily on two grounds: that it was unsworn, and that it was substantially similar to other declarations filed in companion cases against Combs filed Plaintiff's counsel. [A-10, DE 50.] The

11

district court's order appears to have been strongly influenced by these unfounded objections raised by Defendants.

First, while it is true that the Buzbee Declaration was not expressly made under penalty of perjury, it nonetheless qualifies as an attorney affirmation under New York law and, being made by an officer of the court to the court, has the same effect as an affidavit sworn to before a notary public. *MZ Dental, P.C. v. Progressive Northeastern Ins. Co.*, 786 N.Y.S. 2d 908, 911-912 (2004) (citing V. Alexander, Practice Commentaries to CPLR 2106 (McKinney's 2004). Having been signed by Mr. Buzbee and offered to the court as a representation of counsel, the Buzbee Declaration does in fact carry the weight of sworn testimony.

The district court also noted that the Buzbee Declaration is "substantively identical" to declarations filed "on the same day in other *Doe v. Combs* cases in this District involving different plaintiffs and facts" and concluded that this raised "serious questions about the Declaration's reliability." [A-46 at n. 2.] It is true that the undersigned counsel alongside The Buzbee Law Firm filed several cases on behalf of various plaintiffs against Combs and the Company Defendants that same day (with more filed in this District thereafter). As is widely known, the United States government's indictment of Combs on criminal charges generated a considerable amount of litigation against Combs from his victims; Plaintiff's case is no different.

12

But it was exactly the point of the Buzbee Declaration to show a broader context than that afforded by any single plaintiff in a case against Combs. [A41-42.] In particular, the Buzbee Declaration attested to the widespread sentiment among the firm's clients that they *feared coming forward* with their allegations and *feared retribution* from Combs or Combs' allies, relevant to the second through fourth *Sealed Plaintiff* factors. [A41-42 at ¶¶ 4-5.] The point of Mr. Buzbee's representations was that regardless of any direct threats made against Plaintiff or any other plaintiff, the vast majority of clients with claims against Combs all shared a fear of coming forward – that is, of having their identities be known – even beyond the usual reasons associated with survivors of sexual assault. [*Id.*]

### The Court's Assessment of Risks of Physical and Mental Harm

The district court found that the risks of physical and mental harm to Plaintiff were too speculative. [A48-50.] In particular, the court noted that the Buzbee Declaration was "vague and unsworn" and that Plaintiff "relies heavily on Combs' pending criminal charges to establish that he, and the people within his organizations, are dangerous" but concluded that Plaintiff's allegations were not specific enough to weigh in favor of anonymity. Relying on *Doe v. Freydin*, No. 21-cv-08371 (NRB), 2021 WL 4991731, at *2 (S.D.N.Y. Oct. 27, 2021), the court required that Plaintiff "establish with sufficient specificity the incremental injury that would result from the disclosure of [his] identity."

13

However, the court essentially disregarded the Buzbee Declaration's representation of widespread fear amongst Combs' victims on the erroneous view that it was not equivalent to a sworn statement. The Buzbee Declaration was, in fact, itself evidence of a widespread belief *concerning Combs* and shared by Plaintiff that coming forward with allegations of sexual assault against him *would* result in retribution. Moreover, the Complaint alleges a long chronology of Combs' prior and contemporaneous violent behavior. Importantly, these allegations are not speculative or otherwise ill-founded. Rather, all of the criminal charges and civil litigations referenced in those allegations are well-documented and matters of public record.

At bottom, Plaintiff is among a substantial group of persons leveling serious allegations against a person long known to have a violent disposition. It is impossible in these circumstances to pinpoint the "incremental injury that would result from the disclosure" of Plaintiff's identity. But that does not mean, here, that the *possibility* of that injury can or should be discounted entirely, and certainly not in light of potential mitigating factors that could have been, but were not, considered.

### *"Alternate Means" of Protecting Plaintiff's Privacy Are Insufficient*

The district court found that "alternate means" could be used to protect Plaintiff's privacy interests, including use of a protective order for shielding

14

sensitive financial or health information. [A52.] But that is no different from any other civil litigation. This is not ordinary civil litigation and Combs is not an ordinary defendant.

The proferred alternative means do not (and cannot) protect against the two concerns actually driving Plaintiff's request for anonymity: the extraordinary privacy concerns involved in any lawsuit involving sexual assault claims (which are even more weighty here as Plaintiff was a minor at the time) and Plaintiff's concern for physical and mental safety. Both of these are jeopardized by the disclosure of Plaintiff's identity. No amount of redactions on documents exchanged in discovery can alleviate the potential damage done by that disclosure, nor can the public disclosure of Plaintiff's identity ever be undone.

In fact, in finding as it did on this tenth factor under *Sealed Plaintiff,* the district court would essentially eviscerate and entirely negate its finding on the first *Sealed Plaintiff* factor, perhaps the only factor not contested here and by far the most dominant in other courts' analyses. *See, e.g., Nygard*, 2020 WL 4890427, at *5-7.

### Prejudice to Defendants Is Minimal And Speculative at Best

In its initial order on anonymity, the district court specifically noted that Plaintiff's identity could be disclosed to Defendants, once they appeared, to minimize any issues stemming from Plaintiff's anonymity and to allow discovery.

15

[A38.]  However, in its March 2025 order just months later, the district court found that Defendants would suffer significant prejudice if Plaintiff was allowed to proceed anonymously.  [A52-54.]

Central to the court's reasoning is the purported "imbalance" arising when "a defendant must defend himself publicly while plaintiff could make [his] accusations from behind a cloak of anonymity," leading to an "asymmetry in fact-gathering" that increases with increased publicity.  [A52-53] (citing *Doe v. Gooding,* No. 20-cv-06569 (PAC), 2022 WL 1104750, at *7 (S.D.N.Y. Apr. 13, 2022) and *Doe v. Combs*, No. 23-cv-10628 (JGLC), 2024 WL 863705, at *3 (S.D.N.Y. Feb. 29, 2024)).  But *all of the purported prejudice to Defendants* identified by the district court is *at least as, if not more, speculative* and non-particularized than the harms identified in connection with the public disclosure of Plaintiff's identity.  Indeed, the court's analysis is entirely comprised of quotes from case law, without a single specific reference to any valid concerns raised or faced by Defendants here. [A52-53.]

The sixth factor under *Sealed Plaintiff* is "whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court."  537 F.3d at 189-190. It is not a simple question of whether prejudice is *possible*, but whether it is *actual*

16

and whether or not it can be managed and mitigated over the course of the litigation.  While the court found the risks of *Plaintiff's* physical and mental harm to be speculative and non-particularized, the court appears in its order not to inquire into whether Defendants will *in fact* suffer harm or whether it can be abated – in stark contrast to the district court's initial order, which *did* acknowledge these factors.

Indeed, the context of Combs' other cases, including his federal criminal trial, highlights the dismal irony of the court's observations and conclusions. Combs, the alleged perpetrator of the sexual assault, *already was and is defending himself in public* in far more cases, and at far higher stakes, than Plaintiff's lawsuit. One of two key witnesses and accusers in his federal criminal trial, a former girlfriend of Combs', even *testified under a pseudonym* ("Jane").  By contrast, any anonymity granted to Plaintiff, much less at this early stage, was not and cannot be shown to be irreparably prejudicial, especially given counsel's offer to disclose Plaintiff's identity to Defendants' counsel in order not to impede discovery.  [A41.]

Because of the manner in which the district court analyzed the *Sealed Plaintiff* factors, however, "prejudice" to Defendants was essentially what remained after other factors appeared to cancel each other out.

17

### *Ultimately, the District Court Did Not "Balance" Factors Here*

The district court did not perform a balancing test so much as a checklist analysis and comparison of the *Sealed Plaintiffs* factors, such that factors weighing heavily in Plaintiff's favor were simply cancelled out.  [*See, e.g.,* A53-54, section VI.]

For instance, the case law is voluminous and clear that survivors of sexual assault have a significant interest in privacy, *and that the public has an interest in guaranteeing that privacy so that survivors come forward.  See Nygard,* 2020 WL 4890427, at *5-7.  Practically and logically, if a plaintiff seeking anonymity alleges himself to be a victim of sexual assault, and a minor at the time as well, that cannot *simply* be "set against" the countervailing public interest in the openness of judicial proceedings.  The case law and judicial policy clearly indicate that such a plaintiff's privacy interest regularly has been determined to outweigh the public's interest in open courts.  Yet here, the first factor in *Sealed Plaintiff* was set by the court against the public's interest in open courts, essentially cancelling each other out.  [A53-54.]

Similarly, the second through fourth factors (potential physical and mental harm from the disclosure of Plaintiff's identity) were deemed by the court to be too speculative, despite the proffer by Plaintiff's counsel of representations as to levels of fear among clients bringing claims against Combs and Plaintiff's allegations of a

18

litany of criminal and civil proceedings against Combs based on sexual assault and violence, all of which are matters of public record.  These factors were disregarded.  Yet the district court cited "the risk of severe prejudice to Defendants" from Plaintiff's anonymity without identifying or specifying any single instance of actual harm to Defendants.  Moreover, the district court engaged in no analysis of how any possible prejudice to Defendants could be mitigated.  [A52-53.]

Ultimately, the district court here held that a survivor of sexual assault as minor (with a very strong privacy interest under the first *Sealed Plaintiff* factor), proffering concrete reasons and evidence to fear the consequences of disclosing his identity (under the second through fourth *Sealed Plaintiff* factors), must disclose his identity at a very early stage in this litigation due to "significant public interest" and despite Defendants' many pre-existing and related public litigations, because of the *possibility* of prejudice which the court did not examine and for which it did not contemplate any means of mitigation.  In so doing it dismissed legitimate evidence offered by Plaintiff while not looking for support in any offered by Defendants.  That result is not the result of a balancing of factors, but rather is a decision outside "the range of permissible decisions," at least at the nascent stage of this litigation.

19

CONCLUSION

For the foregoing reasons, the order of the district court should be reversed and this case remanded with instructions to enter an order permitting Plaintiff to proceed under a pseudonym, or for further consideration of the matter of whether Plaintiff should be allowed to litigate under a pseudonym in this action.

Dated:   August 6, 2025

Respectfully submitted,

**CURIS LAW, PLLC**

By:   */s/ Antigone Curis*
      Antigone Curis
      antigone@curislaw.com
      52 Duane Street, 7th Floor
      New York, New York  10007
      (646) 335-7220

      *Attorneys for Plaintiff-Appellant*
      *John Doe*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). It contains 4,237 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:      August 6, 2025